UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 08-210(1) RSW/JJG

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | DEFENSE COUNSEL'S POSITION REGARDING SENTENCING; AND |
| v. | REQUEST FOR VARIANCE OR FOR DOWNWARD DEPARTURE |
| ROBERT BONINE BEALE, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INTRODUCTION

Defendant Robert Beale informs the undersigned that he intends to represent himself in further proceedings in this matter and that he intends to file arguments on his own behalf henceforth. Because the undersigned assumed representation of Mr. Beale at this Court's direction shortly before the commencement of jury trial proceedings, and has not been relieved of that responsibility, this filing will set forth factors the Court may wish to consider in determining what type and length of sentence might be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a); and will suggest, alternatively, that downward departure may also be appropriate.

## FACTS

The defendant was convicted along with two co-defendants following a jury trial which provided a very full presentation of the facts leading to the charges and allowed the defendants to

1

present a very complete defense of their actions. The issues surrounded alleged threats against the Honorable Ann Montgomery in connection with Mr. Beale's earlier trial. Following that first trial, Mr. Beale, former millionaire turned tax protester, was sentenced to 134 months, a substantial sentence given that Mr. Beale is 65 years old. Mr. Beale's age, his contributions to the community over many years of successful business involvement and his public expressions of now wishing he had not acted on his tax protest idealism, call for a concurrent sentence or a variance or departure.

## ARGUMENT

### I.

### IN DETERMINING THE SENTENCE, DEFENDANT ROBERT BEALE SHOULD RECEIVE CONCURRENT SENTENCING OR A DOWNWARD DEPARTURE OR VARIANCE FROM THE SENTENCE RECOMMENDED BY THE PRESENTENCE REPORT

As suggested in the PSR at paragraph 90, this Court has discretion to impose any sentence concurrently with the long sentence he recently received in the earlier case. As was argued in the guilt or innocence phase, and in the motion for acquittal or a new trial, the acts for which the defendant is convicted in this case were an unfortunate sequence closely related to the earlier case, and seem to represent a bizarre continuation of the defendant's inexplicable protest stance regarding taxation. Although the government must take seriously forewarnings as the recorded discussions reflected in this case, and although a jury has now convicted the defendants after long deliberation, the actual threat to the judicial process presented by the defendants' ridiculous activity was nonexistent or minimal. Consideration of the § 3553(a) factors in combination with U.S.S.G. § 5G1.3 is appropriate in this case. *U.S. v. Rollins,* 552 F.3d 739, 742 -743 (8th

Cir.2009).  Such consideration calls for the imposition of a concurrent sentence.

Alternatively, this Court should consider whether a heartland downward departure is appropriate because of the unusual circumstance and the magnitude of the loss Mr. Beale has already suffered, taking account of the seriously misguided idealism at the root of his actions; and for the same reason this Court should consider downward departure under §5K2.20. Aberrant Behavior.  Mr. Beale's presents a case fitting the §5K2.20 authorization to depart downward where the defendant's conduct "represents a marked deviation ... from an otherwise law-abiding life."  *U.S. v. Desantiago-Esquivel*, 526 F.3d 398, 400 (8th Cir. 2008).  A district court may grant a general downward departure pursuant to §5K2.0 if it determines that a mitigating circumstance, either in kind or to a degree, was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and the case falls outside the heartland of cases covered by the guidelines. *United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006).  And the guidelines permit consideration of an aggregation of factors in determining whether a case is outside the heartland. *See United States v. Simpson,* 7 F.3d 813, 820 (8th Cir. 1993).  Mr. Beale's case presents the rare and extraordinary case whose characteristics and circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing because of his seriously misguided beliefs and because of the almost chimerical creation that constitutes the obstruction activity.

For the same reasons, and because he demonstrates an inability to resist the impelling influence of his religious-like study of the tax protest literature, there is evidence in the behavior constituting the offense of an inability to fully exercise the power of reason to avoid it, making a

departure appropriate under §5K2.13.[1] The diminished capacity language of the Policy Statement U.S.S.G. §5K2.13 does not require proof that the offense would not have been committed except for Defendant's mental condition, only that it comprised a contributing factor in the commission of the offense. *United States v. Ruklik*, 919 F.2d 95 (8th Cir. 1990). Moreover, it is not necessary that the defendant was unable to understand the wrongfulness of his behavior, only that the diminished capacity affected his ability to control his behavior. *United States v. Lighthall*, 389 F.3d 791 (8th Cir. 2004).

In addition, there should be careful consideration of Mr. Beale's age and excellent professional record, which have combined in a significant legacy of contributions to community. Although not recited in detail in the PSR Mr. Beale's considerable civic accomplishments, some of which have been reported in the Press accounts surrounding his case, are indisputable and it is a matter of public fascination in Press reports of the two cases that his conduct represented grievously aberrant behavior. §5K2.20. Mr. Beale's long incarceration in Sherburne entitles him to some variance credit because of the harsh conditions he had endured.

In the Supreme Court's landmark sentencing decision in *United States v. Booker*, 543 U.S. 220 (2005), was remedied the Sixth Amendment problems with judicial fact-finding under the U.S. Sentencing Guidelines by making the Guidelines "effectively advisory" and fashioning a new "reasonableness" standard for appellate review of sentences. *Id.* at 245-46, 260-65. In a progression of cases including United States v. Rita, 127 S.Ct. 2456, 2463 (2007), *Gall v. United*

---

[1] The psychological evaluation by Dr. James Gilbertson in the earlier case found that Mr. Beale's profile "mirrors" some autistic features in his ability to over focus in "incredible detail" and that he has some "social disconnect issues" and "traits of stubbornness and obsessiveness." That he is "wedded to what is logical and what can be proven" is an explanation for both his great professional and business success, and also his present difficulty.

*States*, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court has made clear that district court judges have substantial discretion to impose non-Guidelines sentences and need not find "extraordinary circumstances" in order to justify such sentences under the 18 U.S.C. §3553(a) factors. Trial courts neither must nor should follow the Guidelines: ". . . the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita*, 127 S. Ct. at 2465.

The following factors under §3553(a) factors are to be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

(1) <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>; Mr. Beale is 65 years old and as various testimonials and the local Press have reported, his conduct in this case was not typical of how he had conducted his life before the adoption of the tax protest stance. He very apparently fell victim to the idealist beliefs of various sources of tax protest information, including, it appears, the teachings of Irwin Schiff and the "tax honesty" movement and similar organizations. The Internet has made this "study" accessible to the general public by the presentation of a sometimes logically appealing set of complex theories that are often used as a *post hoc* rationalization for nonpayment of taxes by those who are unable to do so. It is clear that Mr. Beale adopted them with a religious-like zeal and without any need, but his sentencing in the first case nonetheless imposed a very severe penalty for his adoption of the tax protest creed. He put everything he had acquired from his long history of professional successes at risk and he has now lost everything.

(2) <u>The need for the sentence imposed</u>—

(A) <u>To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>;

     Mr. Beale has already suffered the loss of the entire proceeds of his life's work and has had imposed a sentence that will consume most of the remainder of his life.  He has endured two humiliating federal criminal prosecutions and has suffered the loss of his marriage, business and all of his possessions.  It did not appear in either of the cases that Mr. Beale sought financial gain, but only that he operated from a severely misguided understanding of the law.  The need to promote respect for the law and its processes thus requires some accounting in sentencing Mr. Beale for the fact that he has already lost so much and is already facing an interminably long prison stay.  As in the first case, the trial here demonstrated the details of a tragedy set in motion by a ridiculous course of misguided study which combined with an illogical zeal. The seriousness of the offense is attenuated by its almost comical execution.

(B) <u>To afford adequate deterrence to criminal conduct</u>;  The object of primary deterrence is already satisfied by Mr. Beale's complete ruin and he has acknowledged the same in his open discussions with the local Press in which he publically regrets having taken on the tax authorities. The issue of secondary deterrence of others who might contemplate doing what he was involved in is difficult to analyze because of the unusual station from which Mr. Beale began his undertaking: It is so highly  improbable that any other person of his wealth, influence and education would follow his lead that a reasonable calculation of the likelihood is truly impossible.  Mr. Beale has effectively forfeited everything material and nonmaterial he has acquired in his lifetime of hard work and dedication to profession, family and business and has

made himself an example already of the utter folly of defying the taxing authorities.

(C) <u>To protect the public from further crimes of the defendant</u>; The long sentence Mr. Beale already faces from his first conviction makes it virtually impossible that he will ever again be free.  In addition to the long prison sentence he faces is the fact that he will thereafter be on supervision; so that even if he survives his currently imposed sentence, it is virtually out of the question for him to hope to be off supervision during his lifetime.  In addition to the unlikelihood of Mr. Beale ever again having the opportunity to violate the law, is the fact that his actions to date have been largely a symbolic series of absurd protestation measures not calculated to truly harm the public or public officials, but only to express his strange beliefs about the tax laws.  It is likely that even as this document is filed on his behalf, Mr. Beale will himself be filing nonsense protest documents with which this Court is familiar and which will merely repeat the strange concepts this Court so readily refuted in the series of questions it answered for Mr. Beale during the opportunities for that dialogue at breaks in the trial.  As was clear in those exchanges, Mr. Beale's approach is a generally harmless protest-like exercise, unlikely to garner support or followers, especially among the wealthy business class of which he was once a member.

(D) <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>; Mr. Beale is a highly educated and brilliant engineer and entrepreneur.  He has now advanced beyond his working years, has lost everything and will start from naught if he survives his sentence.  He has laid waste to any possible retirement and now desires only to focus on his religious dedication, away from the world of money and taxes. Both society and this defendant would best be served by a sentence

which allows him the opportunity at this late stage in his life to start over as a productive citizen at the less advantaged social level he has chosen for himself.

## CONCLUSION

The defendant should be sentenced in a range lower than that recommended by the PSR calculation.  For the foregoing reasons, it is respectfully suggested that he be sentenced in a range comparable with Lee Stangni, with variance credit for the long period he has spent at the Sherburne County Jail, together with a term of probation and community service sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553.

Date: February 12, 2009                                   Respectfully submitted,

S/ Dean S. Grau
Dean S. Grau
Attorney at Law
4910 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612)338-3646

ATTORNEY FOR THE DEFENDANT